## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. ECKROTE, | CASE NO. 3:13-cv-02403- GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 6, 7, 14, 15, 19, 23, 30 |

## <u>MEMORANDUM</u>

### I.    Procedural Background

On September 23, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act").    (Tr. 47).    On December 6, 2010, the Bureau of Disability Determination denied this application (Tr. 47), and Plaintiff filed a request for a hearing on December 16, 2010.  (Tr. 63-67). On October 12, 2011, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 25-46).  On November 10, 2011, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 49-62). On January 3, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 6), which the Appeals denied on July 26, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5).

On September 18, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On December 18, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 6, 7). On April 28, 2014, Plaintiff filed a brief in support of his appeal ("Pl. Brief"). (Doc. 14). On July 1, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 23). On August 14, 2014, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 30). On August 1, 2014, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 27). The matter is now ripe for review.

## II.    Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

*of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. §

1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that

he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a

person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also*

*Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds

that a Plaintiff is disabled or not disabled at any point in the sequence, review does

not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially

determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### IV. Relevant Facts in the Record

Plaintiff was born on November 3, 1962 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 58). 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a general construction worker and a prison guard. (Tr. 58).

Plaintiff alleges disability beginning on April 1, 2008 based on a back and neck injury (Tr. 93, 107).

## A. Function Report and Testimony

On October 20, 2010, Plaintiff submitted a Function Report. (Tr. 96-105). He reported problems sleeping and with personal care. (Tr. 97). He reported that he does not cook his own meals. (Tr. 98). He indicated that he mows the lawn on a tractor for four hours at half-hour intervals. (Tr. 98). He reported problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, concentration, and using his hands. (Tr. 101). He did not report problems taking instructions, getting along with others, or handling stress, although he indicated that he does not handle changes in routine well. (Tr. 101-02). He indicated that he has pain in his back, neck, arms, hands, legs, and feet "all day [and] night." (Tr. 104). He reported that he had gained weight due to pain, that his pain medications relieve his pain for only two hours, and that they cause him drowsiness. (Tr. 105).

On October 12, 2011, Plaintiff appeared and testified before the ALJ. (Tr. 25). He testified that he had pain the neck and low back. (Tr. 30). He also testified to numbness, pain, and tingling and indicated that he cannot "stand or sit for a long period of time." (Tr. 31). He testified that he could only lift a few pounds and could only walk about fifty yards due to his back and neck pain. (Tr. 32). He

testified that he can only sit or stand for ten minutes at a time. (Tr. 32). He testified that he does not sleep well and can drive, but only short distances. (Tr. 33-34). He indicated that he could only ride his lawn mower for ten minutes at a time and asked to stand due to pain in his back. (Tr. 35). He testified that he has headaches "all the time" and his wife does the majority of the housework. (Tr. 36). He testified that his pain medications make him drowsy and that neither injections nor physical therapy had helped his pain. (Tr. 38).

## B. Medical Records

Plaintiff asserts disability as of April 1, 2008. *Supra.* On April 1, 2008, Plaintiff presented to the emergency room at the Wyoming Valley Health Care System complaining of neck and back pain after bending over at work. (Tr. 148). He had limited range of motion in his neck. (Tr. 149). Plaintiff was diagnosed with a cervical sprain, improved and stabilized with medication, and was discharged with a prescription for Flexeril. (Tr. 149).

On April 3, 2008, Plaintiff was evaluated by Dr. Emmanuel Jacob, M.D., at Wyoming Valley Pain Clinic and Rehabilitation Center. (Tr. 291). On examination, Plaintiff had muscle spasms, decreased range of motion in his spine, diminished sensation, and tenderness. (Tr. 292). Plaintiff was scheduled for an MRI, instructed to continue to take Flexeril for muscle spasm, and was prescribed Ultram for pain. (Tr. 293).

On April 8, 2008, an MRI of Plaintiff's spine indicated "uncovertebral spurring at the C6-7 level with moderate to severe left and moderate right foramina narrowing. There may be an associated component of soft disc protrusion on the left side." (Tr. 154). An MRI of Plaintiff's lumbar spine indicated "a small central disc protrusion at the L5·S1 without significant central canal narrowing or nerve root impingement" with "no significant foraminal narrowing." (Tr. 155).

On April 11, 2008, Plaintiff presented to the emergency room at the Wyoming Valley Health Care System complaining of neck and back pain. (Tr. 136). His examination was normal and he was discharged with a prescription for pain medication. (Tr. 136-37).

Dr. Jacob also referred Plaintiff to physical therapy and treated him with a TENS unit. (Tr. 263, 283, 285). On April 14, 2008, Plaintiff had his physical therapy evaluation. (Tr. 285). Objective findings included posture deviations, decreased gross spinal mobility, decreased muscle strength, and muscle spasms. (Tr. 285). Plaintiff was assessed to have "cervical and lumbar radiculopathy with protective muscle spasms." (Tr. 285). The same day, he received injections from Dr. Jacob. (Tr. 282). At a follow-up with Dr. Jacob on May 2, 2008, Plaintiff had muscle tightness, tenderness, decreased range of motion, and sleep disturbance. (Tr. 280). Plaintiff underwent 54 sessions of physical therapy from July 11, 2008 to September 23, 2010. (Tr. 196-245, 276-77, 331).

In June of 2008, an EMG was positive for carpal tunnel syndrome. (Tr. 263). On July 26, 2008, neurosurgeon Dr. Akash Agarwai, M.D., evaluated Plaintiff. (Tr. 455). On examination, Plaintiff had diffuse pain and limited range of motion. Dr. Agarwai noted that there were no "definite" signs of radiculopathy and did not recommend neurosurgical intervention. (Tr. 266). He opined that Plaintiff's work related injury "caused musculoskeletal irritation or paraspinous muscle irritation." (Tr. 266). He recommended continued physical therapy with aquatherapy. (Tr. 266).

On October 27, 2008, Plaintiff followed-up with Dr. Jacob. (Tr. 274). He continued to have muscle spasms, decreased range of motion in the spine, and restricted motion of the shoulders. (Tr. 275). He was treated with another injection. (Tr. 275). On November 10, 2008, Plaintiff continued to have muscle tightness, tenderness, and decreased range of motion, and was treated with acupuncture. (Tr. 269). Plaintiff was again treated with acupuncture on November 17, 2007 and December 4, 2008. (Tr. 267-68).

On November 13, 2008, an MRI of Plaintiff's lumbar spine indicated "minimal degenerative disc disease," "disc bulges," a "small central disc herniation" with no stenosis, "minimal" bilateral foraminal narrowing, and Grade 1 retrolisthesis of L5 on S1. (Tr. 272). An MRI of the cervical spine showed multilevel degenerative disc disease, "most severe at C6-7, where moderate to

severe left and moderate right foraminal narrowing is seen due to uncovertebral and facet hypertrophy" with no stenosis. (Tr. 271). There was "no abnormal cord signal" and "mild prominence of the faucial tonsils" (Tr. 271).

On December 16, 2008, Plaintiff was evaluated by Dr. Mark Bell, M.D. at Advanced Pain Management Specialists. (Tr. 263-66). On examination, Plaintiff had decreased range of motion in his spine, muscle spasm, minimal tender trigger point areas, and moderately tight hamstring muscles. (Tr. 265). Dr. Bell diagnosed Plaintiff with neck pain, a cervical herniated nucleus pulposus, cervical radiculitis, cervical facet syndrome, cervical muscle spasticity, occipital headaches, low back pain, lumbar herniated nucleus pulposus, lumbar radiculitis, and lumbar facet syndrome (Tr. 166-67). Dr. Bell prescribed a series of facet block injections, continued physical therapy, and aqua therapy. (Tr. 266). Plaintiff's medications were continued. (Tr. 266). Plaintiff underwent the series of facet block injections, and reported on May 20, 2009 that they provided "very little relief." (Tr. 168). He continued to complain of constant neck and back pain and frequent headaches. (Tr. 168). He was continuing to attend physical therapy twice per week. (Tr. 168). On examination, he had decreased range of motion in his spine, muscle spasm, and "extensive" tender trigger point areas. (Tr. 168).

On April 28, 2009, neurologist Dr.  V. Benjamin Nakkache, M.D., performed an independent medical examination on Plaintiff (Tr. 447). Plaintiff's

medications were Oxycodone, Flexeril, Cymbalta and Neurontin. (Tr. 448). Plaintiff reported only "very slight" improvement with treatment. (Tr. 448). Plaintiff reported difficulty sleeping and was "always tired." (Tr. 449). On examination, Plaintiff had pain, tenderness, and muscle spasm. (Tr. 449). Dr. Nakkache opined that Plaintiff had not reached maximum medical improvement, and that it might "take at least another six months or so to get to that point." (Tr. 450). He opined that he did "believe he could go back to work on a restricted basis, but no more than that for the time being. I do not believe his restrictions are going to be permanent." (Tr. 450).

Plaintiff continued getting treatment, including acupuncture, from Dr. Jacob through 2009 and into 2010. (Tr. 197). On July 26, 2010, Plaintiff had a new patient evaluation with Dr. David Sedor, M.D., a neurosurgeon. (Tr. 301). Dr. Sedor noted that injections and physical therapy had been attempted, but were not successful. (Tr. 301). On examination, Plaintiff had decreased range of motion, "spotty hypalgesia in the arms and legs," "mildly unsteady" Romberg sign, antalgic gait, positive Spurling test, pain, and a positive straight leg raise test. (Tr. 302). Dr. Sedor assessed Plaintiff to have cervical and lumbar radiculopathy, cervical spondylosis, cervical and lumbar disc protrusion, thoracic spondylosis, and headaches. (Tr. 303). Dr. Sedor increased his Percocet, scheduled him for

additional imaging studies, and prescribed physical therapy and hydrotherapy. (Tr. 303).

On September 16, 2010, an MRI of Plaintiff's lumbar spine indicated "severe narrowing" of disc space "with a central protrusion and mild encroachment of the neural foraminal bilaterally," mild degenerative changes at all intervals, a "shallow broad-based protrusion at L4-5 with slight encroachment of the neural foramina," and disc bulging. (Tr. 316). An MRI of Plaintiff's cervical spine indicated straightening of the cervical lordosis, spondylosis, and osteophytes. (Tr. 318).

On July 22, 2010, September 23, 2010, and November 5, 2010, Dr. Jacobs opined that Plaintiff was "totally disabled" with "poor" or "guarded" prognosis. (Tr. 328-29, 336-37, 340-41).

On December 6, 2010, Minda Bermuder, M.D., a state agency physician, reviewed Plaintiff's medical records and found that he was capable of occasionally lifting and/or carrying up to 50 pounds, and frequently lifting and/or carrying up to 25 pounds (Tr. 464). Dr. Bermuder further opined that Plaintiff could stand, walk, and sit for up to six hours in an eight-hour workday, and had no limit on his ability to push or pull (Tr. 464). Plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, and frequently balance (Tr. 465). He had no manipulative, visual, or communicative limitations, and he should avoid concentrated exposure to extreme

heat, cold, wetness, humidity, vibration, and hazards (Tr. 465-66). Dr. Bermuder asserted that, although he performed few household chores, Plaintiff had the ability to care for himself and maintain his home (Tr. 468). He did not need an assistive device to ambulate, and he claimed that his medications had been relatively effective in controlling his symptoms. (Tr. 469).

Plaintiff followed-up with Dr. Sedor through 2011. (Tr. 481-92).On December 14, 2010, he had pain, spotty sensory loss in the upper and lower extremities, antalgic gait, decreased range of motion in the spine, positive straight leg raise test, positive Spurling test, tenderness, and muscle spasm. (Tr. 490). Dr. Sedor again scheduled physical therapy. (Trl. 491).  On March 25, 2011, he had pain, spotty sensory loss in the upper and lower extremities, antalgic gait with difficulty getting on and off a chair, decreased range of motion in the spine, positive straight leg raise test, positive Spurling test, tenderness, and muscle spasm. (Tr. 484). Dr. Sedor continued Plaintiff's pain medications and added Ambien and Cymbalta. (Tr. 485). On June 13, 2011, he had decreased range of motion, positive Spurling sign, antalgic gait, pain, positive straight leg raise, tenderness, and spasms in the spine. (Tr. 481). Dr. Sedor added Oxycontin to Plaintiff's pain regimen. (Tr. 481).

On July 30, 2011, Dr. Sedor opined that Plaintiff was unable to work "until further notice." (Tr. 480). On August 22, 2011, Dr. Sedor completed a medical

questionnaire and opined that Plaintiff could only sit, stand, and walk for less than two hours in an eight-hour workday, he could never lift weights, never crouch or stoop, and he would be absent from work more than four times per month. (Tr. 513-14).

## C. ALJ Findings

On November 10, 2011, the ALJ issued the decision. (Tr. 59). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2008, the alleged onset date. (Tr. 54). At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, degenerative joint disease, and obesity were medically determinable and severe. (Tr. 54). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 54). The ALJ found that Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand and walk 6 out of 8 hours in an 8-honr workday with normal breaks and lunch periods. The claimant has full use of his upper extremities. The claimant can occasionally dim b, stoop, crouch, kneel and crawl.

(Tr. 55). A step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 58). At step five, in accordance with VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 58-59). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 59).

## V.      Plaintiff Allegations of Error

### A. The ALJ's assignment of weight to the medical opinions

In assessing Plaintiff's RFC, the ALJ assigned weight to the medical opinions in the file. (Tr. 23). Plaintiff asserts that the ALJ erred in rejected Dr. Sedor's opinion and failing to acknowledge Dr. Jacob's opinion.

An ALJ must weigh medical opinions in making an RFC assessment. The social security regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2). Section 404.1527(c) establishes the factors to be considered by the ALJ when the opinion of a treating physician is not given controlling weight. Under subsections (c)(1) and (c)(2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians and opinions of examining physicians are given greater weight than opinions of non-examining physicians, as discussed above. Section 404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. Subsection 404.1527(c)(3) provides more weight to opinions that are well supported, which means that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory

findings, the more weight we will give that opinion. The better an explanation a

source provides for an opinion, the more weight we will give that opinion."

Subsection 404.1527(c)(4) states that "the more consistent an opinion is with the

record as a whole, the more weight we will give to that opinion." Subsection

404.1527(c)(5) provides more weight to specialists, and subsection 404.1527(c)(6)

allows consideration of other factors which "tend to support or contradict the

opinion."

    In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), the Third Circuit set forth

the standard for evaluating the opinion of a treating physician, stating that:

> A cardinal principle guiding disability eligibility determinations is that the
> ALJ accord treating physicians' reports great weight, especially "when their
> opinions reflect expert judgment based on a continuing observation of the
> patient's condition over a prolonged period of time." *Plummer [v. Apfel*, 186
> F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348,
> 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d
> Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d
> Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988);
> *Brewster*, 786 F.2d at 585. The ALJ may choose whom to credit but "cannot
> reject evidence for no reason or for the wrong reason." *Plummer,* 186 F.3d
> at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The
> ALJ must consider the medical findings that support a treating physician's
> opinion that the claimant is disabled. See *Adorno*, 40 F.3d at 48. In
> choosing to reject the treating physician's assessment, an ALJ may not make
> "speculative inferences from medical reports" and may reject "a treating
> physician's opinion outright only on the basis of contradictory medical
> evidence" and not due to his or her own credibility judgments, speculation or
> lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d
> 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318. Rejecting the opinion of a treating opinion because it is on an issue reserved to the Commissioner without attempting to recontact the treating physician for clarification generally constitutes rejecting evidence for the "wrong reason:"

> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

SSR 96-5p.[1] "SSR 96-5p emphasizes to the adjudicator the importance of making 'every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.'" *Ferari v. Astrue,* CIV.A. 1:07-CV-01287, 2008 WL 2682507 at *6 (M.D. Pa. July 1, 2008) (Kane, C.J.).

Here, the ALJ rejected Dr. Sedor's opinion because it was on an issue reserved to the Commissioner and he did not provide any explanation, so the bases for his opinion were not clear. (Tr. 23). However, SSR 96-5p requires an ALJ to make "every reasonable effort" to recontact Dr. Sedor if his opinion is on an issue reserved to the Commissioner, and the reasons are not clear. *Id.* There is no indication in the record that the ALJ made any effort to recontact Dr. Sedor, much

---

[1] "Social Security Rulings…are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b).

less "every reasonable effort." *Id.* Consequently, the ALJ was not entitled to reject his opinion on the ground that it was on an issue reserved to the commissioner and did not provide a basis for his opinion.

That leaves only the absence of stenosis or nerve root compression on the MRI as the basis to reject Dr. Sedor's opinion. (Tr.23). However, there is no requirement that a claimant produce an MRI showing stenosis or compression to be entitled to benefits. Moreover, the ALJ was required to independently interpret the MRI in order to determine that it contradicted Dr. Sedor's report. The Third Circuit has explained:

> By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.  Again, if the ALJ believed that Dr. Scott's reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

The ALJ was not entitled to independently interpret Plaintiff's MRI to reject Dr. Sedor's opinion. The ALJ also was not entitled to reject Dr. Sedor's opinion on the ground that it was on an issue to the Commissioner without attempting to recontact Dr. Sedor because the bases for the opinion were not clear. Thus, the ALJ failed to provide any "good reason" to reject the treating source opinion. *See also Ray v. Colvin*, 1:13-CV-0073, 2014 WL 1371585, at *21 (M.D. Pa. Apr. 8, 2014) ("The cursory manner in which the ALJ rejected Dr. Jacob's opinions runs afoul of

the regulation's requirement to " give good reasons" for not crediting the opinion of a treating source upon consideration of the factors listed above. While there may be sufficient evidence in the record to support the ALJ's ultimate decision that Plaintiff was not under a disability, and, thus, the same outcome may result from remand, the court cannot excuse the denial of a mandatory procedural protection on this basis."). Given the well-established preference for the opinion of a treating physician, the Court cannot conclude that substantial evidence supports the ALJ's findings.

Plaintiff also argues that the ALJ erred because he only mentions Dr. Sedor's opinions, not Dr. Jacobs. (Pl. Brief at 18).  The ALJ never acknowledges Dr. Jacob's opinions. (Tr. 328-29, 336-37, 340-41). There is a requirement to evaluate every medical opinion. Section 1527(c) states that the ALJ "will evaluate every medical opinion we receive." *Id.* There is a heightened requirement in Section 1527(c)(2), which applies only to treating physicians. Section 1527(c)(2) states that  ALJs  "will *always give good reasons* in [the] *notice of determination or decision* for the weight we give your treating physician's opinion." *Id.* (emphasis added).  A plain reading of this requirement indicates that an ALJ must always acknowledge a treating source opinion, and may not reject a treating physician's opinion with little or no explanation. As discussed above, SSR 96-5p

requires the ALJ to consider opinions even when they are on issues reserved to the Commissioner. *Id.*

In *Reefer*, the ALJ had acknowledged a treating source opinion, but did not explain why he gave it less weight than a state agency opinion. *Reefer,* 326 F.3d at 382. The Third Circuit explained, "[i]n so holding, the ALJ disregarded Dr. Stevens's contrary report without explaining why he did so, thereby ignoring our mandate in *Fargnoli*. Accordingly, remand is required." *Id*. Similarly, in *Brewster*, the ALJ acknowledged a treating source opinion, but did not explain why it was assigned less weight than the state agency opinion. *Brewster*, 786 F.2d at 585. The Court remanded, explaining that "the ALJ must make clear on the record his reasons for rejecting the opinion of the treating physician." *Id*. Moreover, there is a requirement to discuss significant probative evidence that contradicts the ALJ's conclusion. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir.2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."). The ALJ's failure to address Dr. Jacob's opinion precludes meaningful review. *Id.* Thus, the Court cannot conclude that substantial evidence supports the ALJ's findings. On remand, the ALJ must address Dr. Jacob's opinions.

## VII.    Conclusion

The Court finds that the ALJ's decision lacks substantial evidence because the ALJ failed to address Dr. Jacobs' opinions and failed to provide sufficient justification to reject Dr. Sedor's opinion. Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.

Dated: March 31, 2015                    *s/Gerald B. Cohn*
                                   GERALD B. COHN
                         UNITED STATES MAGISTRATE JUDGE